FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA
_____

No. 1D2023-0869
_____

MICHAEL M. PARSON,

  Petitioner,

  v.

STATE OF FLORIDA,

  Respondent.

_____

Petition for Writ of Certiorari—Original Proceeding.

July 2, 2025

TANENBAUM, J.

The petition asks that we review a trial court's order denying early termination of sex-offender probation. Michael Parson had entered a plea agreement with the State—under which he would plead no contest to traveling to meet a minor, adjudication of guilt would be withheld, and ten years of sex-offender probation would be imposed. The written plea agreement included a handwritten notation, "EARLY TERM AT 5 YEARS," regarding probation. At the plea colloquy, Parson was asked the following by his lawyer: "The State has also agreed to an early termination at five years, if you complete everything and do everything you're supposed to do. No violations or offenses during that time. Okay? *Of course, that would have to be approved by the court.* Okay?" (emphasis supplied). Parson answered, "Yes, sir." At the end of the colloquy, the judge accepted the plea and pronounced the disposition as follows:

I am going to follow the negotiated disposition in this case. I'm going to withhold adjudication pursuant to my findings already. I am going to sentence him to 120 months probation. It will be the same conditions as sex offender probation. So just to make sure it's clear, it's standard probation but with sex offender sanctions.

The appendix submitted by Parson with his petition includes a six-page "Petition to Enter Plea of Guilty/Nolo Contendere." The first four pages of that document contain statements initialed by Parson going to whether he was knowingly and voluntarily entering his plea. Page five contains the "Plea Agreement" that included the handwritten notation just mentioned; this agreement was signed by Parson, his lawyer, and the prosecutor. Page five is a signed certification by Parson's counsel. Page six is the court's order accepting the *plea* (not the plea agreement) as having been "freely, knowingly, intelligently and voluntarily entered by the Defendant." The sentencing judge nowhere signed or purported to make itself a party to the plea agreement. The judge did, however, sign an order of probation that withheld adjudication and placed Parson on supervision with the Department of Corrections for 120 months, or ten years. The probation order makes no reference to early termination, an omission Parson seems not to have challenged.[1]

---

[1] The dissent is incorrect in its assertion that the original sentencing judge "orally pronounced" the early-termination term when he stated that he would "follow the negotiated disposition." The context of the judge's statement belies this contention. Immediately after stating that he would "follow the negotiated disposition," the sentencing judge specifically withheld adjudication and pronounced a 120-month probation—with sex offender conditions—as the disposition. The judge further discussed other specific conditions of probation, and then imposed costs. The judge, then, "followed" the agreement by orally imposing sentence in a manner he considered consistent with the agreement, rather than simply adopt the plea agreement by reference. In doing so, the judge did not mention early termination

2

More than six years into his probation, Parson wrote to the trial court, stating that he had successfully complied with all the probationary terms and had incurred no violations. He noted the agreement with the State regarding early termination. The trial court transmitted a memorandum stating that "[t]ermination of probation is a matter of appropriateness" and seeking the State's position and a recommendation from the department. The State responded by acknowledging the agreement and confirming it had not found any violations by Parson through the first half of his probation. The department also confirmed that Parson had completed the terms of his probation. The trial court treated

---

of probation in either the pronouncement or in the written order. There notably was no objection at the time of pronouncement.

Moreover, whatever the dissent contends was the actual oral pronouncement here, it is not the type the supreme court had in mind when it required, as a matter of judicial policy, that "the actual oral imposition of *sanctions* should prevail over any subsequent written order to the contrary." *State v. Williams*, 712 So. 2d 762, 764 (Fla. 1998) (emphasis supplied). It is true "that a written order must conform to the oral pronouncement . . . because the written sentence is usually just a record of the actual sentence required to be pronounced in open court." *Justice v. State*, 674 So. 2d 123, 125 (Fla. 1996). It also is true that historically, the supreme court has noted the constitutional necessity of giving the defendant notice at the sentencing hearing of the conditions with which he will have to comply to stay on probation. *Williams*, 712 So. 2d at 764. There was no additional, unpronounced condition appearing in the probation order, the violation of which would have put Parson at risk of being revoked. Instead, he now perceives the agreement as containing a benefit to him that purportedly should have been included in the probation order—if that even would have mattered—but was not. This is not a due-process claim; it is a claim that the sentencing order should have been corrected, assuming there was even a pronouncement to be added. Again, Parson did not object at the time of sentencing to preserve this question, and he did not and has not sought to correct the sentencing order at any subsequent point, an effort that likely now would be untimely in any event.

Parson's correspondence as a motion for early termination but nevertheless denied the motion without explanation. Parson then filed a motion—this time through counsel—seeking to enforce the plea agreement and to terminate probation early. Once again, the trial court denied the motion without elaboration.

Once Parson sought relief from this court, we issued an interim writ of mandamus to the trial court to aid in our exercise of certiorari jurisdiction, requiring the court to prepare an amended order that provided an explanation for the denial. *See* Art. V, § 4(b)(3), Fla. Const. ("A district court of appeal may issue writs of mandamus, certiorari, prohibition, quo warranto, and other writs *necessary to the complete exercise of its jurisdiction.*" (emphasis supplied)).[2] The trial court complied. The updated order explained the ruling as follows:

> [] In considering Defendant's two motions for early termination of probation, this Court considered the facts of Defendant's underlying offense; the severity of the offense; the fact that Defendant received a withhold of adjudication; and the fact that Defendant scored a prison sentence. Defendant received a substantial benefit from avoiding a term of imprisonment and receiving a withhold of adjudication. Further, because of his conviction for Traveling to Meet a Minor, Defendant is a registered sex offender.
>
> [] This Court further notes that although Defendant does not qualify as a violent felony offender of special concern, given the nature of his offense, he is similarly situated to defendants who are given the underlying nature of his offense.

---

[2] The dissent questions how we could have jurisdiction to issue this interim writ if we ultimately do not have jurisdiction to grant relief in certiorari. A court, however, always has jurisdiction to assess its own jurisdiction. *See English v. McCrary*, 348 So. 2d 293, 298 (Fla. 1977). The constitutional provision just cited gives us writ authority to do just that.

4

[] For the foregoing reasons, continued reporting probation is necessary to protect the community as well as for the interests of justice.

Parson's probation having been imposed in 2016, he had no post-imposition right of action seeking to shorten the supervision period. *See* § 948.04(3), Fla. Stat. (2016) (authorizing "the Department of Corrections [to] *recommend* early termination of probation to the court at any time" when the probationer has met certain criteria (emphasis supplied)); § 948.05, Fla. Stat. (2016) (authorizing, but not requiring, a trial court to terminate probation early "when satisfied that its action will be for the best interests of justice and the welfare of society"); *State ex rel. Roberts v. Cochran*, 140 So. 2d 597, 599 (Fla. 1962) (noting that "[p]robation is a matter of grace extended to the offender"); *see also Johnston v. State*, 202 So. 3d 976, 976 (Fla. 1st DCA 2016) (highlighting the trial court's "unbridled discretion to decide whether or not to terminate a defendant's probation early"); *but cf.* ch. 2019-167, § 61, Laws of Fla. (amending section 948.04(4) and (5), Florida Statutes, to *require*, for probation imposed *after* October 1, 2019, early termination or conversion to administrative probation if certain criteria are met, unless the court finds "that continued reporting probation is necessary to protect the community or the interests of justice"). Parson's request essentially was one for the trial court to show grace by terminating early, in its "unbridled discretion." *Johnston*, 202 So. 3d at 976.

To invoke our certiorari jurisdiction, however, a petitioner "must identify real injury"—some "substantial invasion of rights" that is not mere "abstract, hypothetical, or inchoate harm"; many times, the asserted injury will be a violation of a fundamental right. *Swift Response, LLC v. Routt*, 401 So. 3d 640, 643 (Fla. 1st DCA 2025) (describing the nature of harm required to support certiorari jurisdiction; quoting *Folsom v. Bank of Greenwood*, 120 So. 317, 318 (1929); and citing *Kilgore v. Bird*, 6 So. 2d 541, 544 (1942) and other supreme court decisions). Parson's claim of harm relies on his contention that the State's plea agreement with him bound the trial court—such that he had a *right* to the *trial court's* early termination if, as he reads the terms, he satisfied all probation terms and conditions.

5

The contention runs directly counter to what the supreme court repeatedly has said on this issue—that a trial court cannot and will not be bound by a plea agreement, even when the court has approved or accepted it. *See, e.g.*, *Tilghman v. Culver*, 99 So. 2d 282, 286 (Fla. 1957) ("Courts cannot bind themselves to agreements such as that shown by this record."); *Davis v. State*, 308 So. 2d 27, 29 (Fla. 1975) (holding that a trial court "is never bound in sentencing by the negotiations which occur between the prosecuting attorney and the defense counsel" and that "plea discussions [cannot] be specifically enforced against a court"); *Goins v. State*, 672 So. 2d 30, 31 (Fla. 1996) ("Even though the plea has been accepted and regardless of whether the judge participated in the negotiations, the judge is never bound to honor the agreement.").[3]

---

[3] The dissent purports to distinguish these supreme court decisions by characterizing them as applying "only when the plea agreement has not yet been accepted by the trial court." Yet all three involved circumstances where the trial judge had in fact accepted the plea. In *Goins*, "[t]he court accepted the plea as knowingly and voluntarily entered" and sentenced the defendant to considerably more prison time than what the agreement reflected. 672 So. 2d at 31. As noted in the parenthetical above, the court was quite clear that "[e]ven though *the plea has been accepted*," the trial court is "*never* bound to honor the agreement." *Id.* (emphases supplied). Same goes for *Davis*: though the trial judge "participated in or tentatively approved a plea bargain," to the point that the judge's "indication of leniency is the [o]nly inducement" for the defendant's plea, "*the court is not bound by it*." 308 So. 2d at 29 (emphasis supplied). "Plea discussions can[not] be specifically enforced against a court." *Id.* Finally, in *Tilghman*, the trial judge did not just accept the plea agreement; the judge "bargained with" the defendant and "reached an agreement with him." 99 So. 2d at 286. Still, any promise made by the judge was not enforceable because—to repeat, once again—"[c]ourts cannot bind themselves to agreements." *Id.* Contrary to the dissent's suggestion, whether the judge has accepted a plea agreement is of no moment to establishing when the trial court is bound by it—which is never.

The dissenting opinion opens by seemingly conflating two distinct concepts: on the one hand, a trial court's obligation to enforce a plea agreement against the State—an unremarkable proposition; on the other, binding a trial court to a plea agreement's terms and enforcing them against the court—a proposition finding absolutely no support in supreme court precedent. The one supreme court decision that the dissent cites for support did not even involve enforcement of an agreement against the State, let alone the trial court. *See McCoy v. State*, 599 So. 2d 645 (Fla. 1992). In that case, the trial court had vacated the defendant's plea and imposed a harsher sentence for his failure to testify "in accordance with prior statements given to law enforcement officials," and the supreme court held the lower court "could not vacate the judgment and sentence" without the State first presenting evidence of the "specific terms of the agreement" that were breached. *Id.* at 646, 648. *McCoy*, at best, spells out how *the State* can seek enforcement of a plea agreement *against the defendant. See id.* at 649 (adopting interim procedure "that would provide the prosecution with a method of addressing a defendant's noncompliance with the specific terms of a plea agreement").

*Simons*, also cited by the dissent, bears out the point that agreements are only enforced against the defendant or the State. *See State v. Simons*, 22 So. 3d 734 (Fla. 1st DCA 2009). The pretrial intervention (or "PTI") at issue in the case was a program run by the local state attorney. *See id.* at 735. The prosecutor promised, on behalf of the State, that if the defendant completed the program, the prosecutor would dismiss the charges. *Id.* The specific performance to which the defendant was entitled was *against the State*, not the court—the ability to dismiss charges being in the prosecutor's hands. *Id.* at 736. Enforcing an agreement between the State and the defendant was not even that remarkable:

> The trial judge did not break any new ground by enforcing the agreement *the parties made* in this case. To the contrary, it is a settled principle of criminal procedure that, *if the government fails* to honor a plea agreement, the court may either enforce the agreement or allow the defendant to withdraw the plea.

7

*Id.* (emphases supplied). Notably, there is not a third option: somehow enforcement of the plea agreement against the court, even though it is not a party to that agreement.

The other district court decisions the dissent cites either support enforcement of plea agreements *against the State* (as in *Simons*) or simply conflict with the supreme court decisions just discussed precluding a trial court from being a party to such agreements. To be clear, Parson did not ask the trial court to enforce the agreement against the State; the State did the most it could under the agreement—not oppose Parson's request for early termination if he had satisfied all the conditions. Because the State had no authority to terminate his probation early, there was no further action that could be compelled from it—nothing to enforce against the State. The trial court's denial of Parson's request for early termination, then, cannot be characterized as a refusal to enforce the agreement.

This leaves Parson with a claim that the judge somehow erred by refusing to abide by a term in the parties' agreement (an agreement to which the trial court was not a party) and asking us, essentially, to order him to terminate probation. The dissent has no problem with this, but we choose to follow the supreme court's decisions repeatedly reminding us that a plea agreement, like the one here, is signed by and is binding on the State and the defendant—no more, no less. If the trial court cannot be made a party to the agreement—and there is nothing to suggest the sentencing judge intended it to be—then the judge's discretion truly is not cabined by any early termination provision in it, and there could be no harm stemming from its proper exercise of that discretion.

Arguably, Parson could have supported certiorari jurisdiction with a contention that the judge refused even to consider the request for grace based on a constitutionally or statutorily impermissible factor. But he makes no such assertion in his petition. The detailed explanation in response to our interim writ reveals no such improper consideration. There being no apparent right in play, Parson fails to identify a cognizable harm that could be remedied in certiorari. Absent cognizable harm, we have no jurisdiction to proceed further.

8

DISMISSED.

WINOKUR, J., concurs with an opinion; BILBREY, J., dissents with an opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WINOKUR, J., concurring.

While I agree with all aspects of our opinion, I write to emphasize two points.

First, I repeat the observation that the probation order following the plea agreement made no reference to early termination. If Parson had objected to the absence of this term from the probation order, he was free to file a motion to withdraw his plea, or a motion alleging that his plea was involuntary. *See* Fla. R. Crim. P. 3.170(l), 3.850(a)(5). Without this term in the probation order, Parson is not actually challenging the later court's failure to comply with the sentence the earlier court actually imposed. Instead, he is challenging the later court's failure to abide by a prior agreement between Parson and the State, an agreement to which the court was not, nor could be, a party.

I submit that a court does not lose its discretion whether to terminate probation early even if the sentencing order calls for early termination at a certain time. But we need not decide this matter because it did not actually occur here. The probation order does not include an early termination provision, despite the plea agreement—to which, again, the court was not a party. This fact alone supports dismissal of Parson's petition.

Second, I disagree with the dissent's contention that the decision here could have "deleterious consequences for the administration of justice" because it could deter defendants from executing plea agreements if a future judge is not bound to

9

terminate probation in accordance with the agreement. A sentencing judge can incentivize a defendant to comply with probation terms without removing a future judge's discretion to terminate probation. In this case, if the parties wanted the defendant to serve five years probation, provided no violations occur, they could have agreed for him to be sentenced to five years probation. The incentive to comply with the terms of probation is the possibility of revocation, extension, or modification of probation, in the event of noncompliance. *See* § 948.06(2), Fla. Stat. (permitting a court to revoke, modify or continue probation upon violation); *Patrick v. State*, 336 So. 2d 1253, 1254 (Fla. 1st DCA 1976) (noting that section 948.06 permits extension of the period of probation). We need not, and in my view cannot, remove a judge's discretion to deny a motion to terminate probation in order to facilitate plea agreements.

With these observations, I concur in the decision to dismiss the petition.


BILBREY, J., dissenting.

"A plea agreement is a contract and the rules of contract law are applicable to plea agreements." *Churchill v. State*, 219 So. 14, 18 (Fla. 2017) (quoting *Garcia v. State*, 722 So. 2d 905, 907 (Fla. 3d DCA 1998)). Once a plea agreement calling for a specific sentence has been accepted by a trial court must the court comply with it? "Yes" say the United States and Florida Supreme Courts as well as Florida district courts of appeal. And when a trial court refuses to comply with agreed upon sentence in an accepted plea agreement does the wronged party have a remedy in the appellate court? "Once again yes" according to the United States and Florida Supreme Courts and the district courts. Yet here, a year and eight months after we ordered the successor trial judge to explain why he would not enforce the agreed upon sentence in the accepted plea agreement, the majority now holds that this court has no jurisdiction to compel the judge to enforce that agreement. This is plainly wrong, contrary to our precedent, and has the potential to impact the administration of justice in our district, so I must dissent.

10

As the majority opinion points out, the plea agreement between Michael Parson and the State clearly provided that probation would "EARLY TERM AT 5 YEARS." Before the sentencing judge accepted the plea, a plea colloquy was conducted in open court. There, Parson acknowledged that "[t]he State has also agreed to an early termination at five years, if you complete everything and do everything you're supposed to. No violations or offenses during that time. Okay? Of course, that would have to be approved by the court. Okay?"

After the colloquy was conducted, the sentencing judge orally accepted the plea and signed an order accepting the written plea agreement. The judge sentenced Parson in accordance with the plea agreement. In accepting the plea and allowing a withhold of adjudication the sentencing judge noted, "And two findings I could make is the legitimate, uncoerced plea bargain, which would be number 1. Because the State is consenting to that. And 2, the offense was committed in an unsophisticated manner. It was an isolated occurrence for which the defendant has shown remorse."[1]

After successfully completing five years of probation, Parson wrote to the successor trial judge and requested early termination as provided by the plea agreement. The judge construed the letter as a pro se motion. The judge directed a response from the State. The State responded writing, "The State has found no violations, and the Defendant is over the half way point of his 10 year term." Nonetheless, the trial court denied early termination.

Through counsel, Parson then formally moved for early termination of probation. Along with referencing the State's response, Parson's counsel attached an email from Parson's probation officer "that the offender has completed all conditions,

---

[1] The majority and concurring opinions both point out that the order of probation does not include the agreement to the early termination of probation. This is immaterial since "a court's oral pronouncement of sentence controls over the written document." *Ashley v. State*, 850 So. 2d 1265, 1268 (Fla. 2003). Here, the trial court pronounced that he was "going to follow the negotiated disposition in this case" that called for early termination of probation.

11

paid their monies, passed their drug screens, and paid their monetary obligation in full." In March 2023, the successor judge again denied the motion. Parson then brought the petition for writ of certiorari that is before us.

In response to the petition, in October 2023 we issued an interim writ of mandamus to the trial court. *Parson v. State*, 386 So. 3d 591 (Fla. 1st DCA 2023). There, writing for the same panel, Judge Tanenbaum stated:

> From what we can tell, the trial court here denied both requests for early termination without a hearing, so we have no transcript to consider. And as we already noted, there is no reasoning for the denials provided in the trial court's orders. To aid in our consideration of whether to exercise our jurisdiction to grant certiorari relief, on our own motion, we exercise our authority under the Florida Constitution to issue an interim writ of mandamus to the trial court. *See* Art. V, § 4(b)(3), Fla. Const. ("A district court of appeal may issue writs of mandamus, certiorari, prohibition, quo warranto, and other writs necessary to the complete exercise of its jurisdiction." (emphasis supplied)). Under that writ, the trial court shall issue an amended order denying Parson's motion for early termination of probation, which must include the court's reasoning for its denial of the motion.[2]

*Id.* at 593.

---

[2] If, as the majority opinion holds, we have no jurisdiction to compel the trial court to comply with the plea agreement's requirement that probation terminate after five years, then what was our basis for entering this interim writ of mandamus? Furthermore, if early termination of probation is a "matter of grace" even when a plea agreement requires early termination, what basis did we have to inquire into the trial court's rationale for denying early termination? Either we were wrong to issue the interim writ of mandamus, or the majority is wrong now. I submit that it is the later.

The successor trial judge complied with our interim writ of mandamus in November 2023. In explaining his denial of early termination, the judge stated, contrary to the plea agreement, that "early termination of the probation would be up to the court's discretion." The judge did not find or even allege that Parson had not completed all required terms of probation. The successor judge then stated:

> In considering Defendant's two motions for early termination of probation, this Court considered the facts of Defendant's underlying offense; the severity of the offense; the fact that Defendant received a withhold of adjudication; and the fact that Defendant scored a prison sentence. Defendant received a substantial benefit from avoiding a term of imprisonment and receiving a withhold of adjudication. Further, because of his conviction for Traveling to Meet a Minor, Defendant is a registered sex offender.
>
> This Court further notes that although Defendant does not qualify as a violent felony offender of special concern, given the nature of his offense, he is similarly situated to defendants who are given the underlying nature of his offense.

(footnotes omitted).

All the successor judge's reasons for denying early termination were known by the sentencing judge at the time of sentencing. These would have been valid reasons for the sentencing judge to reject the plea agreement, but they cannot be used long after the fact by the successor judge to refuse to enforce the plea agreement.

Now, a year and seven months after the successor judge issued his amended order denying termination of probation in response to our writ, and eight years and eight months after Parson entered the plea agreement, the majority decides that we cannot even consider the trial court's rationale for disregarding the plea agreement accepted by the predecessor judge. This is incorrect.

13

"Bargained guilty pleas, then, are in large part similar to a contract between society and an accused, entered into on the basis of a perceived 'mutuality of advantage.'" *Brown v. State*, 367 So. 2d 616, 622 (Fla. 1979) (quoting *Brady v. United States*, 397 U.S. 742, 752 (1970)). Once a plea agreement with a specified sentence is entered and accepted by a trial court, the court is bound by it. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[A] constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *Johnson v. State*, 238 So. 3d 726, 738 (Fla. 2018) ("Nevertheless, general contract principles govern the execution of agreements between a defendant and the State."); *Cox v. State*, 35 So. 3d 47, 48 (Fla. 1st DCA 2010) ("It is well established that a plea agreement is a contract.").

The Florida Supreme Court has required the State to abide by plea agreements that the trial court has accepted. *See Johnson*, 238 So. 3d at 738; *Churchill*, 219 So. 3d at 17 (Fla. 2017); *McCoy v. State*, 599 So. 2d 645, 650 (Fla. 1992). Even so, the majority opinion contends that a trial court is never bound by a plea agreement and cites Florida Supreme Court cases to try to support this proposition. This is an overly broad statement by the majority and whether a trial court is bound to impose a particular sentence depends on the terms of the agreement and the timing of sentencing.[3] The Court has discussed these nuances:

---

[3] Once accepted by a trial judge, a plea agreement is binding. *See* Fla. R. Crim. P. 3.172(g) ("No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by this rule."). Rule 3.172(g) does not say binding only as to the State and defendant. *See Campbell v. State*, 125 So. 3d 733, 741 (Fla. 2013) (disagreeing with the idea that following sentencing "the judge or the State would be allowed to challenge the plea agreement after the defendant has already partially performed his or her duties under the agreement"). And the court cannot increase the sentence after sentencing as discussed below.

14

> There are many varieties of plea agreements. Negotiations often take place only between the state and the defendant, although in some instances the trial judge participates in the negotiations. Even though the plea has been accepted and regardless of whether the judge participated in the negotiations, the judge is never bound to honor the agreement. *Davis v. State,* 308 So.2d 27 (Fla.1975); *Brown v. State,* 245 So.2d 41 (Fla.1971). However, when there has been a firm agreement for a specified sentence and the judge determines to impose a greater sentence, the defendant has the right to withdraw the plea. Fla.R.Crim.P. 3.172(g). On the other hand, if the agreement only calls for the state to recommend a particular sentence and it is clear that the trial judge may impose a greater sentence, the defendant cannot withdraw the plea if a greater sentence is imposed so long as the state carries out its promise. *State v. Adams,* 342 So.2d 818 (Fla. 1977).

*Goins v. State*, 672 So. 2d 30, 31 (Fla. 1996); *see also Rollman v. State*, 887 So. 2d 1233, 1235 (Fla. 2004) ("We continue to agree that a trial court retains the authority to alter a prior plea arrangement up until the time sentence is imposed, so long as the trial court provides the defendant an opportunity to withdraw any plea that was entered in reliance on the promised sentence.").

A trial judge can reject a proposed sentence in a plea agreement between the State and a defendant as too strict or too lenient. *See* Fla. R. Crim. P. 3.171(d), 3.172(h); *State v. Rojas*, 356 So. 3d 876, 883–84 (Fla. 3d DCA 2023); *King v. State*, 578 So. 2d 23, 24 (Fla. 4th DCA 1991). And even after a plea agreement is accepted by a defendant, if a trial judge determines that he or she cannot sentence a defendant in accordance with an agreement, the judge must allow the defendant to withdraw the plea. *See* Fla. R. Crim. P. 3.172(h); *Davis v. State*, 308 So. 2d 27, 29 (Fla. 1975); *King*, 578 So. 2d at 24. But once a plea agreement with a specified sentence has been accepted by the trial court, the State, the defendant, and the court are bound by the agreement. *See McCoy*, 599 So. 2d at 649 (requiring compliance with an accepted plea agreement when a defendant testified as provided by the agreement); *Hoffman v. State*, 474 So. 2d 1178, 1182 (Fla. 1985)

15

("A defendant cannot be allowed to arrange a plea bargain, back out of his part of the bargain, and yet insist the prosecutor uphold his end of the agreement."); *Mack v. State*, 955 So. 2d 51, 56–57 (Fla. 1st DCA 2007) (citations omitted) ("While the State is unquestionably bound by any plea agreement that induces a plea of guilty or nolo contendere… so is the defense.").

And not just the State and defendant are bound by the agreement. The trial court must enforce a plea agreement calling for a specified sentence once the plea agreement has been accepted by the court. *See McCoy*, 599 So. 2d at 650 (remanding case to reimpose original sentence when State failed to show that defendant violated plea agreement); *Rojas*, 356 So. 3d at 884 (preventing a trial court from mitigating sentence in violation of a plea agreement); *Devoid v. State*, 987 So. 2d 219, 220 (Fla. 5th DCA 2008) (requiring the trial court to resentence a defendant "in a manner that would have effectuated the plea agreement"); *Williams v. Dep't of Corrs.*, 734 So. 2d 1132, 1133 (Fla. 3d DCA 1999) (same); *Davis v. Singletary*, 659 So. 2d 1126 (Fla. 2d DCA 1995) (same).

This court has also enforced plea agreements. In *Wright v. State*, 115 So. 3d 1098, 1099 (Fla. 1st 2013), we held that "[a] defendant is entitled to enforcement of the [accepted plea] agreement if the forfeiture of gain time frustrated the intent of the plea agreement." *See also Chase v. State*, 57 So. 3d 898, 899 (Fla. 1st DCA 2011) (same).

Our opinion in *State v. Simons*, 22 So. 3d 734 (Fla. 1st DCA 2009), is analogous to what we have here. There, the parties entered into a settlement agreement to resolve criminal charges along with a related civil case. *Id.* at 735. The agreement called for pretrial intervention (PTI) for the defendant. *Id.* The trial court approved the agreement and directed the parties to comply. *Id.* After Simons paid restitution, the State and the victim tried to back out of the agreement for PTI. *Id.* We noted that normally the decision whether to allow PTI rests solely with the State. *Id.* at 736. But citing *Santobello* and other cases, we held that the agreement was binding on the State. "If that were the case [that an agreement was not binding], the settlement agreement would be nothing more than a set of illusory promises. The agreement

16

would be enforceable by the state and the victim but not by the defendant." *Simons*, 22 So. 3d at 736. "The incentive to settle a case by plea bargaining or by an agreement not requiring a plea would quickly disappear if one party could renege on an agreement without any consequence." *Id.* at 737.

In *Simons*, we noted that a court could allow a defendant to withdraw a plea if the plea agreement was breached. *Id.* at 736–37. But we held that "specific performance is a proper remedy if the defendant has partly performed the agreement." *Id.* at 736 (citing *Williams v. State*, 341 So. 2d 214 (Fla. 2d DCA 1976); *Buffa v. State*, 641 So. 2d 474 (Fla. 3d DCA 1994)). "When an agreement with the defendant has not been fulfilled, the defendant is entitled to specific performance of the unfulfilled promise or to withdrawal of her guilty plea." *Hunt v. State*, 613 So. 2d 893, 898 (Fla. 1992) (citing *Santobello,* 404 U.S. at 263).

The majority opinion also claims that since early termination of probation is a matter of grace, we have no jurisdiction to enforce an agreement calling for early termination. But the general rule that denial of early termination of probation cannot be reviewed by an appellate court applies only when there is not an agreement mandating early termination. The specific agreement between the parties, not the general rule about early termination applies here. In that way this is like our decision in *Simons* where normally the decision to enter into a PTI agreement rested solely with the State, but once an agreement was approved by the court the parties had to comply with the agreement and the court was right to enforce it.

If a defendant breaches the probationary requirements of a plea agreement, the State can enforce the agreement using the violation of probation procedures in section 948.06, Florida Statutes. But without a violation of probation, a sentence cannot be increased by the trial court after sentencing. "Once a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles. . . . To do so is a clear violation of the Double Jeopardy Clause, which prohibits multiple punishment for the same offense." *Ashley v. State*, 850 So. 2d 1265, 1267 (Fla. 2003) (citations omitted). By not allowing early termination as provided

for in the plea agreement, and requiring Parson to serve three years and eight months of additional probation so far and potentially five years of probation beyond what he agreed to, the trial court has increased Parson sentence and violated double jeopardy principles. Compounding the problem, the majority is unwilling to enforce the plain terms of the agreement.

"[A] trial court may not unilaterally modify a previously imposed negotiated sentence between a defendant and the State." *State v. Hall*, 351 So. 3d 654, 656 (Fla. 2d DCA 2022). The trial judge was allowed only to verify compliance with the plea agreement by Parson to allow for early termination according to the plea agreement.

> We hold that where a trial court imposes a probationary period with special conditions and further offers early termination of that probation upon successful completion of all such conditions, the early termination provision is not self-executing. If and when the special conditions are completed before the natural expiration of the probationary sentence, either the defendant or the Department of Corrections must advise the trial court that all such conditions have been satisfied and request early termination. Once the court has confirmed that all special conditions have been fulfilled it will then terminate the probation.

*Hepburn v. State*, 780 So. 2d 326, 328 (Fla. 3d DCA 2001) (citations omitted).

The successor judge's amended order fails to justify denial of early termination of probation. He reads the plea agreement to grant him discretion to deny termination, but that is not a plain reading of the agreement or the plea colloquy. The amended order says, "any early termination of the probation would be up to the court's discretion." This differs from the actual language of the plea agreement that stated, "The State has also agreed to an early termination at five years, if you complete everything and do everything you're supposed to." Parson completed every term of probation and had no violations. And the statement during the plea colloquy that early termination of probation "would have to be approved by the court" did not give the court any discretion.

Rather, it just meant that probation did not automatically terminate, and the trial court would have the ability to make sure Parson had completed the conditions of probation before termination. *See Mack*, 955 So. 2d at 54 (citing *Quarterman v. State*, 527 So.2d 1380, 1382 (Fla.1988)) ("Our supreme court has held that plea agreements may contain conditions that depend on later fact finding.").

"If the state and the defendant agree that certain matters will be left for the trial court to determine in its sole discretion, the agreement should plainly say so. A court may not look beyond the language employed in a plea agreement to supply terms which could or should have been included, but for one reason or another, were not." *Deponte v. State*, 670 So. 2d 176, 177 (Fla. 4th DCA 1996). The successor judge erroneously adds language to the plea agreement and the majority approves of that error.

Finally, we have jurisdiction to remedy the successor judge's error. "It is well settled that to obtain a writ of certiorari, there must exist '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.'" *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812 (Fla. 2004) (quoting *Bd. of Regents v. Snyder*, 826 So. 2d 382, 287 (Fla. 2d DCA 2002)). First, as shown above, failure to enforce the plain terms of an accepted plea agreement following sentencing departs from the essential requirements of law. Second, Parson has been injured by having to remain on probation, along with the associated costs and restrictions on his liberty, for three years and eight months longer than he has agreed to so far. Increasing his sentence is a Double Jeopardy violation. *See Ashley*, 850 So. 2d at 1267. Third, we have held that denial of a motion for early termination is not an appealable final order, so the third prong to establish our certiorari jurisdiction is present. *See Johnston v. State*, 202 So. 3d 976 (Fla. 1st DCA 2016).[4]

---

[4] Our holding in *Johnston* was based on *Ziegler v. State*, 380 So. 2d 564 (Fla. 3d DCA 1980). In *Ziegler*, the court said that since early termination of probation was "entirely a matter of grace, we hold that an order denying that relief is non-appealable." *Id*. at

I would grant the petition and direct the successor judge to comply with the binding agreement and immediately terminate Parson's probation. The majority's failure to take this simple action has potentially deleterious consequences for the administration of justice. An estimated 90 to 95 percent of criminal cases are resolved through a plea agreement between the prosecutor and defense. Devers, *Plea and Charge Bargaining*, (Jan. 24, 2011), https://bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/pleabargainingresearchsummary.pdf (last visited Jun. 18, 2025). A defendant's violation of probation can be sanctioned by the State, but now a defendant has no right to enforce the plea agreement and require probation terminate despite full compliance by the defendant. Why would a defendant be inclined to execute an agreement if the agreement was not mutually binding once accepted by the sentencing court? The court warned about this in *Simons*, but the majority disregards this warning in violation of established contract principles. It is clearly wrong that a defendant cannot enforce an accepted plea agreement requiring early termination of probation, and I hope this error will be corrected by this court en banc or a higher court.

---

Richard E. Hornsby of Richard E. Hornsby, P.A., Orlando, for Petitioner.

James Uthmeier, Attorney General, and Adam Wilson, Assistant Attorney General, Tallahassee, for Respondent.

---

564. As explained above, complying with an accepted plea agreement after sentencing is not a matter of grace but of right. I would argue that we have appellate jurisdiction under rule 9.140(b)(1)(D), Florida Rules of Appellate Procedure, since this is an order entered after final judgment. But since the majority proceeds along the "matter of grace" line of thinking, there is no right to appeal. Accordingly, the error here cannot be corrected on a post judgment appeal, so we have certiorari jurisdiction. Otherwise, we should have converted Parson's petition to a direct appeal shortly after it was filed over two years ago.